No. 22-80136

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

C.P., by and through his parents, Patricia Pritchard and Nolle Pritchard,
individually and on behalf of others similarly situated;
and PATRICIA PRITCHARD,

Plaintiffs-Respondents,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant-Petitioner.

---

On Appeal from the United States District Court for the Western District of
Washington, Hon. Robert J. Bryan, District Judge (No. 3:20-cv-06145-RJB)

---

**RESPONDENTS' ANSWER IN OPPOSITION TO BLUE CROSS BLUE
SHIELD OF ILLINOIS'S PETITION FOR PERMISSION TO APPEAL**

---

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE
HAMBURGER PLLC
3101 Western Ave., Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585
ogonzalez-pagan@lambdalegal.org

Jennifer C. Pizer
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600
jpizer@lambdalegal.org

Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1176 K Street N.W., 8th Floor
Washington D.C. 20006
Tel. (202) 804-6245
kloewy@lambdalegal.org

*Attorneys for Plaintiffs-Respondents*

## Table of Contents

I.    INTRODUCTION................................................................1

II.   STATEMENT OF THE ISSUES.......................................6

III.  STATEMENT OF THE CASE...........................................6

     A.   BCBSIL Is a "Health Program or Activity" Subject to the ACA's Health Anti-Discrimination Law. ...................................6

     B.   BCBSIL Consistently Administered the Exclusions to Deny Coverage to More than 500 Enrollees.......................................7

     C.   BCBSIL Is Neither a Religious Entity Nor an Agent of its Contracted Employers. ...............................................................9

     D.   BCBSIL's Administration of C.P.'s Claims Reflect its Standard Practice. ........................................................................9

IV.  ARGUMENT ..................................................................12

     A.   Legal Standard for Interlocutory Review .................................12

     B.   BCBSIL Does Not Demonstrate Any of the Rule 23(f) Scenarios.................................................................................12

     C.   Commonality Is Easily Demonstrated.......................................13

          1.   Both Parties Agree That There Is a Common Question..................13

          2.   Any "Individual Issues" Do Not Defeat Commonality....................14

          3.   Class Certification Does Not Conflict with *Doe v. Snyder*. ..........................................................................17

          4.   The Availability of Alternative Coverage Is Irrelevant....................18

     D.   Typicality Is Met. ......................................................................18

     E.   BCBSIL's Merits-Based Arguments Are Premature and Irrelevant to Class Certification. ..............................................20

V.   CONCLUSION ...............................................................21

# Table of Authorities

## Cases

*Ballas v. Anthem Blue Cross*,
   2013 U.S. Dist. LEXIS 199523 (C.D. Cal., April 29, 2013)..........................16

*Berndt v. Cal. Dep't of Corr.,*
   No. C 03-3174 VRW, 2010 U.S. Dist. LEXIS 57833 (N.D.
   Cal. May 19, 2010) ........................................................................................17

*Brown v. Bd. of Educ.,*
   347 U.S. 483 (1954)........................................................................................20

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ..........................................................6, 13, 22, 24

*Day v. Humana Ins. Co.*,
   335 F.R.D. 181 (N.D. Ill. 2020).....................................................................20

*Des Roches v. Cal. Physicians' Serv.,*
   320 F.R.D. 486 (N.D. Cal. 2017).....................................................................16

*Doe v. CVS Pharm., Inc.,*
   2022 U.S. Dist. LEXIS 139684 (N.D. Cal. Aug. 5, 2022) ................................1

*Doe v. Snyder,*
   28 F. 4th 103 (9th Cir. 2022) ..........................................................................19

*Doe v. United Behavioral Health,*
   523 F. Supp. 3d 1119 (N.D. Cal. 2021).........................................................3, 4

*Fain v. Crouch*,
   545 F.Supp.3d 338 (S.D.W. Va. 2021)..............................................................1

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................15

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) .....................................................................6, 22

*In re Hyundai & Kia Fuel Econ. Litig.*,
   No. MDL 13-2424-GW(FFMx), 2014 U.S. Dist. LEXIS
   195179 (C.D. Cal. Nov. 5, 2014)........................................................ 5

*Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income*
   *Prot. Plan*,
   349 F.3d 1098 (9th Cir. 2003) ......................................................... 22

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012), *reversed in part on other*
   *grounds, Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*
   *Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....................................... 14

*Plumb v. Fluid Pump Serv., Inc.*,
   124 F.3d 849 (7th Cir. 1997) ............................................................ 3

*Renton v. Kaiser Found. Health Plan, Inc.*,
   No. C00-5370RJB, 2001 U.S. Dist. LEXIS 20015 (W.D.
   Wash. Sep. 24, 2001) ....................................................................... 18

*Saffle v. Sierra Pac. Power Co. Bargaining Unit*,
   85 F.3d 455 (9th Cir. 1991) ................................................ 15, 16, 17

*Sutton v. Providence St. Joseph Med. Ctr.*,
   192 F.3d 826, 841 (9th Cir. 1999) .................................................. 23

*T.S. v. Heart of Cardon, LLC*,
   43 F.4th 737 (7th Cir. 2022) ............................................................. 1

*Thornton v. Comm'r of Soc. Sec.*,
   570 F.Supp.3d 1010 (W.D. Wash. 2020) ........................................ 17

*UNUM Life Ins. v. Ward*,
   526 U.S. 358 (1999)........................................................................... 3

*Urena v. Earthgrains Distribution, LLC*,
   No. SACV 16-00634-CJC(DFMx), 2017 U.S. Dist. LEXIS
   223159 (C.D. Cal. July 19, 2017)............................................... 18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011)......................................... 6, 15

*Wit v. United Behav. Health,*
  2022 U.S. App. LEXIS 7514 (9th Cir. Mar. 22, 2022) ................................... 16

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) .......................................................................... 21

## Statutes

29 U.S.C. § 1144(d) ............................................................................................... 2

42 U.S.C. § 18116(a) ............................................................................................. 2

42 U.S.C. § 2000bb-1(c) ...................................................................................... 22

# I.  INTRODUCTION

This case turns on a relatively straightforward question:  May a third-party administrator ("TPA") that is subject to the Affordable Care Act's ("ACA") health anti-discrimination law because it accepts federal funding, administer a discriminatory exclusion contained in an ERISA self-funded health plan?  As discussed in the Class's pending cross motion for summary judgment (Dkt. No. 96) the answer is likewise straightforward: "No." TPAs cannot engage in rank discrimination by claiming to be "just following the orders" of employers who contract with the TPAs to administer their employees' health plans.  The law is unambiguous: a health program that accepts federal funds cannot engage in discrimination in *any* of its operations, including when acting as a TPA for others. *See T.S. v. Heart of Cardon, LLC,* 43 F.4th 737, 743 (7th Cir. 2022); *Doe v. CVS Pharm., Inc.,* 2022 U.S. Dist. LEXIS 139684 at *27 (N.D. Cal. Aug. 5, 2022); *Fain v. Crouch*, 545 F.Supp.3d 338, 343 (S.D.W. Va. 2021).

Defendant Blue Cross Blue Shield of Illinois ("BCBSIL") is a TPA and a health insurer that is subject to the ACA's health anti-discrimination law, also known as Section 1557.  *See* 42 U.S.C. § 18116(a); Dkt. No. 84-2, pp. 27:24–29:17. BCBSIL accepts federal financial assistance in some of its health insurance business, and in return, it is subject to the ACA's anti-discrimination law in "all operations." 42 U.S.C. § 18116(a).  BCBSIL violates Section 1557 when it administers

discriminatory exclusions of coverage for the treatment of gender dysphoria[1] (the "Exclusion" or "Exclusions"), even when it does so at the direction of the various employers with whom it contracts as a TPA.  When BCBSIL administered the Exclusion to deny medically necessary treatment for Plaintiff C.P.'s gender dysphoria, it discriminated against C.P. on the basis of sex and violated the ACA.

BCBSIL claims it had "no choice" but to administer the Exclusions because the employers included the Exclusions in their health plans. *See* Dkt. No. 87, p. 10. But under ERISA, a TPA must always obey federal law, even when doing so would be inconsistent with a specific plan term or benefit design.  *See* 29 U.S.C. § 1144(d). The requirements of non-preempted federal or state law override and supplant any literal plan terms that the TPA is otherwise obligated to administer.  *See UNUM Life Ins. v. Ward*, 526 U.S. 358, 376–77 (1999); *Plumb v. Fluid Pump Serv., Inc.,* 124 F.3d 849, 861 (7th Cir. 1997) (the relevant law enters into the plan and modifies non-conforming terms); *see e.g., Doe v. United Behavioral Health,* 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (TPA may not administer plan terms including a blanket exclusion of certain treatment for people with autism, when doing so would violate federal law).

---

[1] This treatment is also referenced herein as gender-affirming care.

When an employer asks BCBSIL to administer the discriminatory Exclusions, BCBSIL is not without legal options: (1) It can refuse to administer the proposed health plans because it would be illegal discrimination to apply the literal terms of the Exclusions. Those employers would then have to either abandon the Exclusions in order to contract with BCBSIL or to find TPAs that are not subject to Section 1557; (2) BCBSIL can administer the plans, but not the Exclusions, consistent with Section 1557's requirements. BCBSIL could then ask each employer to pay for the cost of the otherwise excluded gender-affirming treatment, or, as BCBSIL did with C.P.'s first Vantas implant, it could pay for the cost of the treatment on its own, thus avoiding illegal discrimination while retaining the employer's business; or (3) BCBSIL could seek judicial guidance as to whether or how it could administer the Exclusions, pursuant to 29 U.S.C. § 1132(a)(3) and/or under 28 U.S.C. § 2201(a), the Declaratory Judgment Act.

BCBSIL takes none of these non-discriminatory actions. Instead, it places its own financial interests above the legal and fiduciary obligations it owes to the Plaintiff Class and administers the Exclusions despite the requirements of the ACA. It does so, while claiming its contracting employers are wholly responsible for the discrimination. BCBSIL cannot "hide behind the plan terms" when it has an independent obligation to comply with Section 1557 in all operations. *See Doe*, 523 F. Supp. 3d at 1127.

Procedurally, this case is close to trial, which is scheduled for February 6, 2023. Dkt. No. 73. Both parties engaged in extensive discovery, which closed in August 2022. *Id.* The dispositive motion deadline passed on October 31, 2022. *Id.* Cross motions for summary judgment are fully briefed and awaiting adjudication by the Trial Court. *See* Dkt. Nos. 87, 96, 118, 126. On November 9, 2022, the Trial Court certified a class under Rule 23(b)(1) and (b)(2) of approximately 505 individuals enrolled in BCBSIL-administered ERISA self-funded plans that contain the Exclusions who have been denied pre-authorization and/or coverage of gender affirming care due by BCBSIL.[2] Dkt. No. 113; Dkt. No. 84-17, p. 7 (Answer to Interrogatory No. 8).

BCBSIL jumps the gun with this interlocutory appeal on class certification. ***First,*** none of the reasons for interlocutory appeal are present. There is no "death-knell" scenario here, and no cost savings to either party for the Ninth Circuit to consider this interlocutory appeal just a few months before trial, with the case already having been substantially litigated. At this stage, it is most efficient for the Courts and the parties to have any appeal of class certification considered with appeal on the merits.

---

[2] After consulting with the parties' counsel, the Trial Court decided that appointment of a guardian ad litem was not required, and, given that a mandatory class was certified under Rule 23(b)(1) and (b)(2), no notice would be required before the pending dispositive motions are adjudicated. *See* Dkt. No. 119, 130.

***Second,*** the only Rule 23 objections raised by BCBSIL in its Petition (commonality and typicality, *see* Petition at 16–21) do not present any "manifest error" or "unsettled and fundamental issue" related to class certification "that is likely to evade end-of-the-case review." *In re Hyundai & Kia Fuel Econ. Litig.,* No. MDL 13-2424-GW(FFMx), 2014 U.S. Dist. LEXIS 195179 at *32 (C.D. Cal. Nov. 5, 2014), *citing to Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). The common question identified by both BCBSIL and the Plaintiff Class in the pending cross motions for summary judgment is the same – can a TPA that receives federal funds administer exclusions of gender affirming care for ERISA self-funded plans? "[I]n one stroke," the Trial Court will decide that common answer for all class members. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S. Ct. 2541 (2011); *see* Dkt. No. 113, p.8.

C.P. is also typical of the Class since BCBSIL applied the same standard practice to his claims for gender affirming care that it applied to the claims of all other class members: In each instance, the diagnosis of "gender dysphoria" was the trigger for BCBSIL's application of the Exclusions. Dkt. No. 84-9, pp. 40:17–22. The facts that BCBSIL argues are "unique" to C.P. (his age, course of treatment, the post-denial review by the Plan Administrator, Catholic Health Initiatives ("CHI")) do not undermine typicality, since the same standard practice is still applied by BCBSIL. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

*Third,* BCBSIL's remaining objections are thinly disguised arguments on the merits. *See* Petition at 11–16. The issues of (a) whether a TPA can be subject to Section 1557 when it administers ERISA self-funded claims; (b) if so, the proper remedy to be invoked; and (c) whether the Religious Freedom Reformation Act ("RFRA") shields BCBSIL from liability under Section 1557 for administering the Exclusions because one or more contracting employers may have a "sincerely-held religious belief" are all issues on the merits, and are irrelevant to class certification. *Id.* at 11–16. These issues have been fully briefed in the pending summary judgment motions. *See generally* Dkt. Nos. 87, 96, 118, 126. BCBSIL cannot rush to appeal these substantive issues until an adjudication on their merits is actually made.

## II. STATEMENT OF THE ISSUES

Whether this Court should deny BCBSIL's Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) since it fails to demonstrate that the limited circumstances for interlocutory appeal are present here?

## III. STATEMENT OF THE CASE

The key facts in this case are largely undisputed:

### A. BCBSIL Is a "Health Program or Activity" Subject to the ACA's Health Anti-Discrimination Law.

BCBSIL is a health program or activity subject to Section 1557 of the ACA. It is part of its parent company, Health Care Service Corporation ("HCSC"), which receives federal financial assistance for its health programs and activities. Dkt.

- 6 -

No. 84-1, p. 11:5–9; Dkt. No. 84-2, pp. 9:2–12; 17:14–18:9; 18:16–21:8.  All of BCBSIL's activities are health-related.  *Id.,* pp. 16:20–17:10.  Indeed, BCBSIL, through HCSC, signed an assurance with the federal government, promising to comply with Section 1557.  Dkt. No. 84-3, ¶ 5.

Consistent with Section 1557, and BCBSIL's clinical determination that gender-affirming care can be medically necessary, BCBSIL removed its categorical exclusion of coverage for gender-affirming care from its insured policies in 2015. Dkt. No. 84-1, pp. 33:7–18, 35:15–36:8, 46:11–21; Dkt. No. 84-4, p. 20; Dkt. No. 84-6, pp. 163:15–164:11.  Nonetheless, when acting as a TPA, BCBSIL still agrees to administer exclusions of gender-affirming care when requested by employers.  Dkt. No. 84-2, pp. 28:19–29:17; Dkt. No. 84-6, p. 165:8–12.

## B. BCBSIL Consistently Administered the Exclusions to Deny Coverage to More than 500 Enrollees.

When an employer asks BCBSIL to include a gender-affirming care exclusion in its plan, the overwhelming majority of the employers use the categorical exclusion drafted and proffered by BCBSIL.  Dkt. No. 84-17, Addendum A, p. 13; Dkt. No. 84-6, pp. 34:16–22, 41:12–24; Dkt. No. 84-9, pp. 25:4–27:15 (378 plans use the BCBSIL standard language for the Exclusion, while the handful of variations from

BCBSIL's standard Exclusion are "represented uniquely in one plan" each).[3] BCBSIL never asks employers for a justification or reason when the employers ask to add the Exclusion to their plan. Dkt. No. 84-6, pp. 72:21–73:7; Dkt. No. 84-9, p. 28:14–17 (BCBSIL will administer the Exclusions based upon nothing more than the "personal preference of that particular client"). BCBSIL would administer the Exclusion even if the employer expressed overtly discriminatory reasons for it. *Id.* at 29:4–16. BCBSIL does not require employers to have a genuine medical, scientific, or even a religious basis for asking it to administer the Exclusion. *See id.* at 28:20–23, 29:17–25.

When administering a gender-affirming care exclusion, BCBSIL's actions are the same, regardless of specific plan language: BCBSIL reviews all such claims to determine if the services are related to "gender dysphoria," based on the diagnostic and procedural codes used in the coverage request. Dkt. No. 84-6, pp. 69:8–71:4; *see, e.g.,* Dkt. No. 84-9, pp. 22:2–24:11 (when BCBSIL's legal team identified plans that contained the Exclusions, it looked for denials of claims that included a gender dysphoria diagnosis); 40:17–22 (gender dysphoria is the condition that triggers the application of the Exclusions). If so, the service is denied under the Exclusions.

---

[3] Whether the Exclusion in C.P.'s BCBSIL-administered plan was authored solely by CHI or if it was simply a "one-off" from BCBSIL's standard Exclusion is disputed, but ultimately, immaterial for class certification, since the focus in this case is on BCBSIL's standard administration of the Exclusions.

BCBSIL consistently administered the Exclusions to deny claims and pre-authorization requests for treatment for gender dysphoria, a condition with which only transgender people are diagnosed. Dkt. No. 84-17, p. 7 (Answer to Interrogatory No. 8). At the same time, BCBSIL covers most services that can be used to treat gender dysphoria when the services are provided to treat other conditions. *See* Dkt. No. 84-6, pp. 124:10–125:14, 127:5–22; Dkt. No. 84-14*,* Dkt. No. 84-1*,* pp. 64:17–65:1.

## C. BCBSIL Is Neither a Religious Entity Nor an Agent of its Contracted Employers.

BCBSIL admits it is not a religious entity or an agent for such a religious entity. Dkt. No. 41, ¶ 14; Dkt. 84-15, § 14.1. Nor does it ask any contracting employer if the employer has a religious reason for applying the Exclusion. Dkt. No. 84-9, pp. 28:20–23, 29:17–25. BCBSIL does not ask employers to attest to any "sincerely held religious belief." *See id.* BCBSIL failed to present any declaration or testimony from a contracted employer – including CHI – that attests to a sincerely held religious belief, much less that such a belief motivated the use of the Exclusion in their BCBSIL-administered health plan.

## D. BCBSIL's Administration of C.P.'s Claims Reflect its Standard Practice.

BCBSIL's denial of coverage for Plaintiff C.P.'s chest surgery and second Vantas implants reflects its standard administration of the Exclusions. Plaintiff C.P.

is a young man who is transgender. Dkt. No. 97-12, p. 27:1–5. He has been diagnosed with gender dysphoria by treating and evaluating providers. Dkt. Nos. 97-3, 97-4, 97-5; Dkt. No. 97-13, pp. 43:21–44:24, 65:4–20, 105:10–106:4; Dkt. No. 97-14, pp. 53:24–54:16, 55:3–21. He is enrolled in a BCBSIL-administered self-funded plan that contains an Exclusion. Dkt. No. 97-12, p. 15:2–12; Dkt. No. 81, ¶ 2; Dkt. No. 84-13, p. 67 of 142.

BCBSIL covered and paid for C.P.'s first Vantas implant[4] as medically necessary, consistent with its own medical policy. Dkt. No. 84-1, pp. 52:19–53:9, 59:20–60:18; Dkt. No. 84-10, pp. 2–3 of 3; *see* Dkt. No. 97-16, pp. 20:11–21, 23:12–17. BCBSIL later claimed that the coverage was in error, not because the treatment was not medically necessary, but rather because BCBSIL claimed that such coverage was not permitted in the CHI plan. Dkt. No. 84-11. Coverage for a second Vantas implant was denied by BCBSIL based upon the Exclusion. Dkt. No. 97-1, pp. 125:18–127:22; Dkt. No. 97-20.

After undergoing medically necessary treatment for gender dysphoria (prescribed by his doctor in accordance with the standards of care, and including more than a year of prescribed hormone therapy covered by his health plan), C.P.'s

---

[4] C.P.'s Vantas implant was used to deliver hormones into his body as part of his gender-affirming treatment. *See* https://www.webmd.com/drugs/2/drug-92124/vantas-implant/details (last visited 11/30/22).

treatment team recommended he undergo gender-affirming surgery in the form of a mastectomy and male chest reconstruction. Dkt. Nos. 97-3, 97-4, 97-5. Prior to the surgery, C.P. was assessed not only by his treating primary care physician, who has over 15 years of experience with treating gender dysphoria, but also by a licensed mental health provider who confirmed his gender dysphoria diagnosis and also deemed the surgery to be medically necessary. Dkt. Nos. 97-3, 97-4, 97-16, pp. 22:7–23:11, 33:1–20, 39:18–40:19; 97-11, pp. 9:1–11:7, 12:1–13:10.

When C.P. sought pre-authorization for his chest surgery, it was denied by BCBSIL based solely upon the Exclusion. Dkt. No. 84-14; Dkt. No. 97-1, pp. 124:13–125:14. BCBSIL's Rule 30(b)(6) witness agreed that the surgery was medically necessary under BCBSIL's own medical policy. Dkt. No. 84-1, pp. 60:19–62:3 ("Based on the records that I reviewed and the medical policy, yes, I believe it [C.P.'s chest surgery] would have been covered.").

Consistent with BCBSIL's Medical Policy, C.P. was assessed by a licensed mental health counselor, Sharon Booker, prior to his chest surgery. Dkt. No. 97-4. Plaintiffs' expert psychiatrist and psychologist confirmed that C.P. was appropriate for chest surgery from a mental health perspective. Dkt Nos. 97-6, 97-7. BCBSIL's insinuation that C.P. was required to be evaluated by a psychiatrist before starting any treatment for gender dysphoria is not only inconsistent with the generally accepted standards of care, it is also inconsistent with BCBSIL's own Medical

Policy. *Compare* Petition at 9 *with* Dkt. 84-4; Dkt. 97-9, p. 37 of 261, Statement 5.1.c; Dkt. No. 84-1, pp. 60:19–62:3.

## IV.  ARGUMENT

### A.    Legal Standard for Interlocutory Review.

Interlocutory review under Rule 23(f) is designed to be "the exception rather than the rule" and should only be granted "sparingly." *Chamberlan,* 402 F.3d at 959.  It is most appropriate when the appeal meets one of the following three situations:  (1) class certification is a "death knell" for one of the parties; (2) the certification rests on a "unsettled and fundamental issue of law relating to class actions" "that is likely to evade end-of-the-case review" or (3) the certification decision is "manifestly erroneous." *Id.*  To obtain interlocutory review on a claim of "manifest error," "[t]he error in the district court's decision must be significant" and "easily ascertainable from the Petition itself." *Id.*  Typically such error will be "one of law, as opposed to an incorrect application of law to facts." *Id.*

### B.    BCBSIL Does Not Demonstrate Any of the Rule 23(f) Scenarios.

BCBSIL does not allege that class certification at this stage of the proceeding is a "death knell" scenario. *See generally,* Petition.  And, although it asserts in its "Preliminary Statement" that the Trial Court's decision "raises significant issues of class certification law," BCBSIL never identifies any such issues in its argument. *See id.* at 2.  Instead, BCBSIL improperly argues its defenses on the merits ***which were not adjudicated on class certification***. *Id.* at 2–3, 11–16; *but see* Dkt. No. 113,

p. 11 ("Those defenses may be raised when and if they are ripe for decision"). The only issues raised in BCBSIL's Petition related to class certification are its objections to commonality and typicality. *Id.* at 3, 16–21. As shown below, no error occurred in the Trial Court's class certification decision and certainly no "manifest" or significant error.

## C. Commonality Is Easily Demonstrated.

BCBSIL misunderstands the commonality requirement of Rule 23. Commonality does not require that the language of all of the plans that BCBSIL administers be the same, or that every step of the claims adjudication process be alike. Petition at 16. Rather commonality merely requires that there be "a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *reversed in part on other grounds, Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). What is important is whether class-wide proceedings have the capacity to "generate common answers to common questions of law or fact." *Id.* at 588–89 (*quoting Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551).

### 1. Both Parties Agree That There Is a Common Question.

As reflected in both parties' pending dispositive motions, there is at least one common question: May a TPA subject to the Section 1557 be liable for its administration of exclusions of gender affirming care in ERISA self-funded plans?

*See e.g.,* Petition at 11; Dkt. No. 113, p. 8. The Court's adjudication of a "yes" or "no" answer to this question will determine for all class members whether BCBSIL may continue its standard practice of administering the Exclusions for ERISA self-funded plans. That is all that is required to demonstrate commonality. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

## 2. Any "Individual Issues" Do Not Defeat Commonality.

BCBSIL incorrectly claims that individual issues of medical necessity will "overwhelm any common question." Petition at 18. Neither the Trial Court nor this Court are required to consider "individual issues" to determine if an ERISA TPA's standard conduct when administering the Exclusions violates the ACA. Under *Saffle v. Sierra Pac. Power Co. Bargaining Unit*, 85 F.3d 455, 461 (9th Cir. 1991), if the Plaintiff Class prevails on this key legal issue, the proper relief is an order to BCBSIL to reprocess Class members' individual denials in accordance with its existing Medical Policy and without the discriminatory Exclusion. *See Des Roches v. Cal. Physicians' Serv.,* 320 F.R.D. 486, 499 (N.D. Cal. 2017); *Ballas v. Anthem Blue Cross*, 2013 U.S. Dist. LEXIS 199523, *35 (C.D. Cal., April 29, 2013); *see also Wit v. United Behav. Health,* 2022 U.S. App. LEXIS 7514 at *9 (9th Cir. Mar. 22, 2022) (upholding class certification by finding plaintiffs' claims "avoided the individualized nature of the benefits remedy … by seeking 'reprocessing'" but reversing on the merits).

To be clear, the Plaintiff Class is ***not*** seeking an adjudication by the Trial Court (or eventually, by this Court) as to the medical necessity of gender affirming care as to any individual. Consistent with *Saffle*, the Plaintiff Class seeks the following equitable relief: (1) a declaration that the administration of the Exclusions by BCBSIL is discrimination in violation of Section 1557; (2) an order requiring BCBSIL to refrain from such discriminatory administration of the Exclusions in the future; and (3) an order directing BCBSIL to notify Class members, and then accept and re-process previously denied claims and pre-authorization requests for gender-affirming care in a non-discriminatory manner consistent with BCBSIL's existing medical policy, and, if medically necessary, pay for those claims. *See Saffle*, 85 F.3d at 461. The injunction sought would "open the door" to a genuine consideration of medical necessity of class members' claims by ***BCBSIL*** under its existing Medical Policy, not by any court. *See Thornton v. Comm'r of Soc. Sec.*, 570 F.Supp.3d 1010, 1027 (W.D. Wash. 2020) ("Although each claimant will have an individual case to be made to support his or her claim for … benefits, certifying the class will give each class member the opportunity to make that claim – something they have been unable

- 15 -

to do in the past.") (cleaned up).[5]   That BCBSIL may have to make individualized medical necessity decisions *after* liability is determined on a classwide basis is unremarkable and, indeed, something that TPAs do every day as a fundamental part of their business.

BCBSIL relies on two cases for its "individual issues" argument: *Renton v. Kaiser Found. Health Plan, Inc.,* No. C00-5370RJB, 2001 U.S. Dist. LEXIS 20015 at *25–26 (W.D. Wash. Sep. 24, 2001) (Petition at 16) and *Urena v. Earthgrains Distribution, LLC*, No. SACV 16-00634-CJC(DFMx), 2017 U.S. Dist. LEXIS 223159 at *9 (C.D. Cal. July 19, 2017) (Petition at 20).   Both are unavailing. In *Renton,* the district court denied class certification where the plaintiffs did not challenge a standard course of conduct by defendants, but rather objected to the various disclosures that different defendants made regarding medical necessity determinations. *Id.,* 2001 U.S. Dist. LEXIS 20015 at *25–26.   In contrast here, there is extensive Rule 30(b)(6) testimony regarding BCBSIL's standard practice when administering the Exclusions. Dkt. No. 97-4, 97-5. *Urena* does not help BCBSIL either.   In that case, the trial court denied class certification under Rule 23(b)(3)'s

---

[5] The class definition is also objectively precise. *See* Petition at 19, *citing to Berndt v. Cal. Dep't of Corr.,* No. C 03-3174 VRW, 2010 U.S. Dist. LEXIS 57833 at *7 (N.D. Cal. May 19, 2010).   BCBSIL located, via its claims files, the 505 class members who received denials for gender-affirming care due to the Exclusions during the class period.   Dkt. No. 84-17, p. 7 (Answer to Interrogatory No. 8).   The class definition is no "minefield of subjectivity."

predominance test, which is inapplicable to the class certified here under Rule 23(b)(1) and (b)(2). *Id.,* 2017 U.S. Dist. LEXIS 223159 at *9.

### 3.    Class Certification Does Not Conflict with *Doe v. Snyder*.

BCBSIL claims that this Court's decision in *Doe v. Snyder,* 28 F. 4th 103 (9th Cir. 2022) somehow precludes class certification here.  Petition at 18.   However, *Doe* sought a ruling from Ninth Circuit as to whether a mandatory preliminary injunction should issue on behalf of two transgender youth.  *Id.* at 106.  No issues of class certification were raised in the appeal, and, in fact, the motion for class certification had been withdrawn.  *See id.*   Ultimately, the Ninth Circuit concluded that the *Doe* plaintiffs had not presented sufficient evidence to meet the very high standard for a mandatory preliminary injunction.  *Id.* at 111–112.  The Ninth Circuit reached no conclusion as to whether individual facts precluded class certification in *Doe* or in any other case.   BCBSIL misrepresents the decision when it claims otherwise.[6]

---

[6] *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 2020) is also unavailing. *See* Petition at 18–19. In *Day,* the trial court dismissed class allegations because plaintiffs failed to allege a common course of conduct by a TPA for all putative class members.  Here BCBSIL's Rule 30(b)(6) admitted to a common course of conduct, which this litigation challenges.  Dkt. Nos. 97-4, 97-5.

### 4. The Availability of Alternative Coverage Is Irrelevant.

BCBSIL claims commonality fails because unidentified employers may "offer other options that provide [gender-affirming care] coverage." Petition at 19.[7] Not true. If the Court concludes that BCBSIL engaged in illegal sex discrimination when it administered the Exclusions, then BCBSIL violated Section 1557, regardless of whether a class member could have obtained coverage elsewhere. Indeed, if such a defense were permitted by the Court, it would allow employers and TPAs to *segregate transgender enrollees* into separate (and likely unequal) health plans in order to receive coverage for medically necessary gender affirming care. *Cf., Brown v. Bd. of Educ.,* 347 U.S. 483, 495 (1954). Anti-discrimination law does not permit defendants to get a "free pass" on discrimination if a class member could have obtained coverage elsewhere. *See* Dkt. No. 113, p. 9.

### D. Typicality Is Met.

BCBSIL's arguments related to typicality are also unavailing. Petition at 21–22. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). It is

---

[7] Given BCBSIL's unfounded resistance to disclosing which plans contained Exclusions (*cf.* Dkt. No. 70, p. 4), the record is devoid of how many employers offer additional plans that do not contain an Exclusion. *See* Dkt. No. 94-1, *Exh. C,* p. 101:11–13 of 139.

undisputed that BCBSIL subjected C.P.'s claims for his second Vantas implant and chest surgery to the same exclusionary administration that it imposed on other members of the class: all class members had claims or pre-authorization requests submitted to BCBSIL with a diagnosis of gender dysphoria. Based upon that diagnosis and the specific service codes excluded by the plan (whether all services or just surgical services), BCBSIL "red-flagged" the claims for denial. No medical necessity review was done of the claims. As BCBSIL's Rule 30(b)(6) witness admitted, in every instance, the diagnosis of "gender dysphoria" was the trigger for the application of the Exclusions. Dkt. No. 84-9, p. 40:17–22. Any individual differences in C.P.'s specific case do not matter.[8] Typicality does not require that all Class members be harmed in the same way or to the same degree. *See Hanon,* 976 F.2d at 508. Rather, C.P. faced the same discrimination as every other class member, regardless of the specific course of care denied as a result.

---

[8] Typicality is not destroyed because C.P.'s denials were forwarded to the Plan Administrator. Petition at 21. ***First,*** the trigger for such review was BCBSIL's standard administration of the Exclusion. ***Second,*** while CHI asked to review the denied claims related to gender affirming surgery (likely so it could prepare for any resulting employee complaints), ***CHI never changed the denials of the claims.*** Dkt. No. 100-4, pp. 74:17–75.5. Of course, if CHI reversed any of BCBSIL's determinations, it could jeopardize CHI's claim to have "delegated discretionary authority" to BCBSIL in the plan. *See* Dkt. No. 84-13, p. 117 of 142; *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1105 (9th Cir. 2003).

**E.      BCBSIL's Merits-Based Arguments Are Premature and Irrelevant to Class Certification.**

BCBSIL spills much ink arguing its dispositive motion in this interlocutory appeal of class certification.  *See* Petition at 11–16.  While the Court has broad discretion to consider appeals under Rule 23(f), *Chamberlan,* 402 F.3d at 957, at a minimum, the issues must be related to class certification.  BCBSIL cannot "pre-emptively" appeal before the Trial Court issues its summary judgment decision.

BCBSIL's claims about Section 1557's impact on TPAs, and its assertion that the remedies sought by the Plaintiff Class are not permissible, are fully answered in the Class's dispositive briefing.  *See* Dkt. No. 96, pp. 17–39; Dkt. No. 126, pp. 2–10.  In summary, the 2020 HHS rulemaking does not authorize categorical exclusions of gender-affirming care.  BCBSIL avoids identifying in its Petition any specific rule that does authorize such exclusions (*see id.* at 12) because there is none. The 2020 HHS rules are ***silent*** on the legality of categorical exclusions of gender-affirming care.  RFRA is also irrelevant in this case between two private entities. RFRA does not apply in litigation that does not involve a governmental party.  42 U.S.C. § 2000bb-1(c); *see Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 841 (9th Cir. 1999).  *See* Dkt. No. 96, pp. 38–45; Dkt. No. 126, pp. 10–12.

Finally, the Plaintiff Class do not seek an injunction from the Trial Court that would require employer plans to "delete or modify" any exclusions of gender affirming care, as BCBSIL disingenuously suggests.  Petition at 13; *see* § IV.C. 2

- 20 -

above.  This case is focused solely on whether BCBSIL, a health program or activity subject to Section 1557 with no "sincerely held religious beliefs," may administer discriminatory Exclusions when asked to do so by employers.  The Plaintiff Class leaves the issue of whether employers may impose such Exclusions in their health plans to other litigants.

## V.   CONCLUSION

For these reasons, Petitioner BCBSIL's Motion for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) should be denied, as none of the standards articulated in *Chamberlan* 402 F.3d at 959 are met.

RESPECTFULLY SUBMITTED:  December 5, 2022.

<div style="margin-left:2em">

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

 */s/ Eleanor Hamburger*
Eleanor Hamburger
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com


LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

 */s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

</div>

Jennifer C. Pizer
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600; Fax (213) 351-6050
Email: jpizer@lambdalegal.org

Karen L. Loewy
1176 K Street N.W., 8th Floor
Washington D.C. 20006
Tel. (202) 804-6245
Email: kloewy@lambdalegal.org

*Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs-Respondents, certifies that:

1.      This answer complies with the word limit of Fed. R. App. P. 5(c)(1). The brief contains 4,925 words, excluding the items exempted by Fed. R. App. P. 32(f).

2.      The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). The brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 in Times New Roman 14-point type.

DATED:  December 5, 2022.

 */s/ Eleanor Hamburger*
Eleanor Hamburger
ehamburger@sylaw.com
*Attorneys for Plaintiffs-Respondents*

**CERTIFICATE OF SERVICE**

I hereby certify on December 5, 2022, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: December 5, 2022, at Seattle, Washington.

 */s/ Eleanor Hamburger*
Eleanor Hamburger
ehamburger@sylaw.com
*Attorneys for Plaintiffs-Respondents*